1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THEODORE HEINEMANN,

     Plaintiff,

  v.

PORT OF SEATTLE POLICE,

     Defendant.

CASE NO. C12-0966 RSM

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

## I. INTRODUCTION

  This action stems from Plaintiff's claims arising from his arrest by officers of the Port of Seattle Police following an alleged incidence of harassment aboard a United Airlines flight arriving in Seattle, Washington. Dkt. # 4. Plaintiff is appearing *pro se*. Defendant moves for summary judgment. Dkt. # 11. For the reasons set forth below, Defendant's motion is GRANTED.

## II. BACKGROUND

  Plaintiff initiated this suit against the Port of Seattle Police Department arising from the fallout of an incident that occurred at the conclusion of United Airlines Flight 816 landing in

Seattle on June 17, 2009, on which Plaintiff was a passenger.  Prior to the airplane reaching the gate, Plaintiff approached two crewmembers sitting in the aft galley of the plane.  Plaintiff asked Ms. Tamara L. Rife and Ms. Susan D. Steckler, "So I bet there isn't 24hr customer service in Seattle?" Ms. Steckler and Ms. Rife responded that there were no personnel at the United Airlines customer service desk at that time of night.  Plaintiff then started ranting about "United 1-800-LIE-TO-ME," started to curse, and started to get angry.  Ms. Steckler asked Plaintiff to watch his language which only seemed to enrage Plaintiff further.  In response, Ms. Rife called the purser and captain of the flight to inform them of the situation.  The captain asked if the passenger was simply being verbal or getting physical to which Ms. Rife responded that at this point it was just verbal but she felt the situation could escalate into a physical incident.  Plaintiff overheard Ms. Rife's response and he threatened that "it was going to get physical if [she] didn't shut up." Dkt. # 13, 10.  Ms. Rife and Ms. Steckler both felt frightened and began to shake.  Ms. Rife grabbed the ice mallet from the galley for protection in case the encounter turned physical. Plaintiff continued to confront Ms. Rife and Ms. Steckler until the plane reached the gate.  Ms. Steckler followed Plaintiff to the front of the aircraft as he exited.  Plaintiff continued his verbal attacks and also confronted the captain as he left the airplane.

At approximately 1:40 a.m., Officer Jason Coke[1] of the Port of Seattle Police Department was dispatched to gate N-14 of the Seattle-Tacoma International Airport in response to a call from United Airlines Flight 816 requesting police assistance with a disruptive passenger. When Officer Coke reached the gate the pilot and crew were leaving the airplane.  The crewmembers informed Officer Coke that the passenger had left the airplane and provided a physical

---

[1] Officer Coke now holds the rank of Sergeant with the Port of Seattle Police Department.

1  description.  Officer Coke put the information out over the radio then continued to interview Ms.

2  Rife and Ms. Steckler about the incident.

3      At around 1:52 a.m., Officer Darin Beam[2] and Officer Moss, both of the Port of Seattle

4  Police Department, headed to baggage claim to locate the passenger.  Arriving in baggage claim,

5  Officers Beam and Moss made contact with the Plaintiff.  Officer Beam informed the man that

6  they were investigating someone making threats to harm and asked the man for his identification.

7  The man was identified as Theodore Heinemann.  Officer Beam relayed to Officer Coke that he

8  and Officer Moss had located the passenger at which point Officer Coke informed them that he

9  believed they had probable cause to arrest him.  At around 1:54 a.m., Officers Beam and Moss

10  detained Plaintiff and escorted him outside baggage claim in order for Officer Coke to confirm

11  the identification.  Officer Coke drove Ms. Rife past Officer Beam and Plaintiff at which point

12  Ms. Rife positively identified Plaintiff as the passenger who threatened her during the flight.

13      Officers Beam and Moss escorted Plaintiff to booking at the Port of Seattle Police

14  Department.  Pursuant to department policy the contents of Plaintiff's pockets were emptied.

15  While in booking, Plaintiff informed Officer Beam that he needed to take his anti-seizure

16  medication.  Instead of giving Plaintiff the medication himself, Officer Beam called the Port of

17  Seattle Fire Department at around 2:22 a.m. to ensure that any medication was properly

18  administered.

19      Firefighters responded to the call and arrived at booking around 2:28 a.m. Firefighter

20  Jeff Hendrickx, a fifteen year veteran with the Port of Seattle Fire Department, was the acting

21  officer in charge of the call.  Firefighter Hendrickx spoke with Plaintiff who was alert, oriented,

22  cooperative, coherent, and in no apparent distress.  Plaintiff explained that it was time for his

23  _____

24  [2] Officer Beam now holds the rank of Detective with the Port of Seattle Police Department.

ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

1   medication.  Firefighter Hendrickx examined the medication, verified that it was Plaintiff's, and

2   verified the appropriate frequency and dosage.  Firefighter Hendrickx provided Plaintiff with

3   water and Plaintiff took his medication.  Plaintiff was asked if he had any other medical concerns

4   or needed any other medical attention to which he responded that he did not.  Plaintiff did not

5   complain of having had a seizure or that he was fearful of having a seizure.  Nor did Plaintiff

6   display the physical signs and symptoms of having had a seizure.  At no point during his

7   examination did Firefighter Hendrickx observe any signs or symptoms associated with a Grand

8   Mal seizure such as confusion, disorientation, weakness, or extreme fatigue.  Based on his

9   observations, experience, and training, Firefighter Hendrickx determined that Plaintiff did not

10  have a serious medical need and did not require a complete medical work up.  Firefighter

11  Hendrickx and his crew then left booking at around 2:37 a.m., just fourteen minutes after

12  arriving.  Plaintiff was issued a citation numbered CPS 013351 for investigation of harassment

13  and released from custody by Officer Beam at around 3:03 a.m.

14      Plaintiff filed this action *pro se* asserting various claims associated with his arrest. Dkt. #

15  4. Defendant now moves for summary judgment. Dkt. # 11.

## III. DISCUSSION

**A.  Standards**

18      Summary judgment is proper where "the movant shows that there is no genuine dispute

19  as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

20  56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In ruling on summary

21  judgment, a court does "not weigh the evidence or determine the truth of the matter but only

22  determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549

23  (9th Cir. 1994) (citing *FDIC v. O'Melveny & Myers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on*

24

ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

1   *other grounds*, 512 U.S. 79 (1994)). Material facts are those which might affect the outcome of

2   the suit under governing law. *Anderson,* 477 U.S. at 248.

3        The Court must draw all reasonable inferences in favor of the non-moving party. *See*

4   *O'Melveny & Myers*, 969 F.2d at 747.  However, the nonmoving party must "make a sufficient

5   showing on an essential element of her case with respect to which she has the burden of proof" to

6   survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If a party fails

7   to properly support an assertion of fact or fails to properly address another party's assertion of

8   fact as required by Rule 56(c), the [C]ourt may . . . consider the fact undisputed for purposes of

9   the motion" or the Court may "grant summary judgment if the motion and supporting materials .

10  . . show that the movant is entitled to it." FED. R. CIV. P. 56(e)(2)-(3). Whether to consider the

11  fact undisputed for the purposes of the motion is at the Court's discretion and the Court "may

12  choose not to consider the fact as undisputed, particularly if the [C]ourt knows of record

13  materials that should be grounds for genuine dispute." FED. R. CIV. P. 56, advisory committee

14  note of 2010. On the other hand, "[t]he mere existence of a scintilla of evidence in support of the

15  plaintiff's position will be insufficient; there must be evidence on which the jury could

16  reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252.

17       Parties proceeding *pro se* are held to less stringent standards. *Rand v. Rowland*, 154 F.3d

18  952, 957 (9th Cir. 1998).  Thus, the Court must consider as evidence all admissible facts offered

19  by a *pro se* party "in his motions and pleadings, where such contentions are based on personal

20  knowledge . . . and where [the *pro se* party] attested under penalty of perjury that the contents of

21  the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir.

22  2004).  By signing, filing, or submitting a pleading, motion, or other paper a *pro se* party

23  represents that "the factual contentions have evidentiary support or . . . will likely have

24

1    evidentiary support after a reasonable opportunity for . . . discovery." FED. R. CIV. P. 11(b)(3).

2    Thus, in ruling on Defendant's motion the Court has considered all the facts alleged in Plaintiff's

3    Complaint (Dkt. # 4), Response (Dkt. # 20), and Declaration of Bodily Injury (Dkt. # 23).

4    **B.  Procedural Matters**

5           Defendant moves to strike Plaintiff's Response (Dkt. # 20) as untimely under Local Rules

6    W.D. Wash. CR 7(d)(3). Dkt. # 21, 2.  Additionally, the Court notes that portions of Plaintiff's

7    Declaration of Bodily Injury could also be stricken under CR 7(g) as an improper surreply. Dkt.

8    # 23. The Court need not rule on these issues in deciding this case.[3]

9           However, Plaintiff asserts new causes of action in his Response, Dkt. # 20, that are not

10   identified in his Complaint, Dkt. # 4. Claims not contained in the Complaint cannot be brought

11   for the first time in a Response to defeat summary judgment. *McGinest v. GTE Serv. Corp.*, 360

12   F.3d 1103, 1139 (9th Cir. 2004) (O'Scannlain, J., concurring in part and dissenting in part);

13

14   _____

15   [3]       The Court notes that Plaintiff's assertion that FED. R. CIV. P. 12(a) provides him sixty
     days to respond is without merit. Dkt. # 23, 1. Plaintiff misunderstands the meaning of this rule.
16   Rule 12(a) applies only to the filing requirements of an "Answer" and "Reply" to a "Complaint."
     The current motion before the Court is Defendant's Motion for Summary Judgment, Dkt. # 11.
17   Thus, the Local Civil Rules not FED. R. CIV. P. 12(a) applies to the timeliness of Plaintiff's
     Response in this case.
18          Local rules are "laws of the United States." *United States v. Hvass*, 355 U.S. 570, 575
     (1958). FED. R. CIV. P. 83(a)(1) provides that "a district court . . . may adopt and amend rules
19   governing its practice." These local rules are valid so long as they are consistent with the Federal
     Rules of Civil Procedure. *Marshall v. Gates*, 44 F.3d 722, 724 (9th Cir. 1995). Thus, the local
20   rules of the United States District Court for the Western District of Washington are binding on
     all parties appearing before the court unless the rule was amended by the court or abrogated by
21   the judicial council of the circuit. FED. R. CIV. P. 83(a)(1). In this case, since the Local Civil Rule
     7(d)(3) is current and has not been abrogated by the Ninth Circuit they are binding on Plaintiff.
22          Under the Local Civil Rules a responding party must file their response to a motion for
     summary judgment no "later than the Monday before the noting date." CR 7(d)(3). The noting
23   date for Defendant's motion was Friday, August 10, 2012. Dkt. # 11. Thus, Plaintiff was
     required to file his response by Monday, August 6, 2012. CR 7(d)(3). Plaintiff filed his response
24   one week later on Monday, August 13, 2012. Dkt. # 20. Because Plaintiff is proceeding *pro se*,
     the Court will grant Plaintiff leniency and will not strike his Response. Dkt. # 20.

1    *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1293 (9th Cir. 2000).  Thus, the Court limits

2    Plaintiff's claims to those raised in the complaint.

3        Unfortunately, Plaintiff's *pro se* Complaint is difficult to follow and requires the Court to

4    engage in mental gymnastics in order to discern Plaintiff's claims. Dkt. # 4. However, construing

5    the Complaint liberally, the Court finds that Plaintiff makes claims (1) for false arrest under 42

6    U.S.C. § 1983, (2) for inadequate medical attention under 42 U.S.C. § 1983, (3) for false arrest

7    under Washington law, and (4) for negligence under Washington law. Dkt. # 4. The Court

8    addresses each claim in turn.

9    **C. Federal Claims Under 42 U.S.C. § 1983**

10       Plaintiff asserts two claims under 42 U.S.C. § 1983. First, he claims that he was falsely

11   arrested and second, that he was denied medical attention.

12       Before addressing the merits of Plaintiff's claims, the Court must first determine what

13   parties are named as defendants in the Complaint. The Complaint is titled "Heinemann V.S [sic]

14   Port Of Seattle Police." Dkt. # 20, 1. Thus, the Port of Seattle Police Department is clearly

15   identified as a defendant.  However, the body of the claim also identifies a named party, Officer

16   Coke. Dkt. # 20, 1. Specifically, Plaintiff charges that he "was detained illegally and suffered

17   undue violence because plaintiff suffered a Grand-mall [sic] Seizure due to the direct negligence

18   of officer [sic] Coke" and that "Officer Coke and the Port of Seattle police department [sic]

19   should be held liable for Officer Coke's blatant negligence." Dkt. # 20. Construing a *pro se*

20   plaintiff's complaint liberally, the Court finds that Plaintiff has also named Officer Coke as a

21   party to this litigation. Thus, there are two defendants in this case, the Port of Seattle Police

22   Department and Officer Coke.

23       Defendant Port of Seattle Police Department ("Port of Seattle P.D.") contends that it is

24   immune from § 1983 liability because it is not a "person." Dkt. # 11, 6-7. The Court agrees.

1    In order for § 1983 liability to attach, a party must first meet the statutory definition of a

2    "person." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64 (1989).  However, municipal

3    police departments and bureaus are not considered "persons" within the meaning of 42 U.S.C. §

4    1983. *United States v. Kama*, 394 F.3d 1236, 1239-40 (9th Cir. 2005).  Thus, both of Plaintiff's §

5    1983 claims against the Port of Seattle P.D. fail on the basis of immunity.

6    Unlike police departments, individual officers may only assert a defense of qualified

7    immunity.  Courts apply a two-prong analysis to determine if an officer is entitled to qualified

8    immunity: "(1) whether the facts alleged show that the officer violated a constitutional right; and

9    (2) if so, whether that right was clearly established at the time of the event" such that the officer

10   would have been on notice that the officer's conduct was unlawful. *Rosenbaum v. Washoe Cnty.*,

11   663 F.3d 1071, 1075-76 (9th Cir. 2011) (citing *Ashcroft v. al-Kidd*, — U.S. —, 131 S.Ct. 2074,

12   2080 (2011)).  Plaintiff asserts two violations of constitutional rights: the right to be free from

13   unlawful arrest and the substantive due process right to receive adequate medical care.  Each is

14   addressed in turn.

15   1.  <u>False Arrest</u>

16   Plaintiff asserts he was falsely arrested in violation of his Fourth Amendment right to be

17   free from unlawful search and seizure.[4] Dkt. # 4.  "It is well established that an arrest without

18   probable cause violates the Fourth Amendment and gives rise to a claim for damages under §

19   1983." *Rosenbaum*, 663 F.3d at 1076 (internal citation and quotation omitted).  But, an officer

20   may still be "entitled to qualified immunity if he reasonably *believed*" probable cause was

21   present. *Id.* (emphasis in original).  In the context of an unlawful arrest, the two prongs of the

22

23   [4] Plaintiff claims Officer Coke unlawfully arrested him. Dkt. # 4. However, there is a factual
     dispute as to whether the arresting officer was Officer Coke or Officer Beam. Dkt. # 14, ¶¶4-7.
     Regardless of who actually conducted the arrest, both officers in this case have qualified

24   immunity for both of Plaintiff's § 1983 claims.

1  qualified immunity analysis are "(1) whether there was probable cause for the arrest[] and (2)

2  whether it is *reasonably arguable* that there was probable cause for arrest." *Id.* (emphasis in

3  original).

4        An officer has probable cause "when the facts and circumstances within the arresting

5  officer's knowledge are sufficient to warrant a prudent person to believe that a suspect has

6  committed, is committing, or is about to commit a crime." *Mackinney v. Nielsen*, 69 F.3d 1002,

7  1005 (9th Cir. 1995) (internal quotations and citations omitted).  "The analysis involves both

8  facts and law. The facts are those known to the officer at the time of the arrest.  The law is the

9  criminal statute to which those facts apply." *Rosenbaum*, 663 F.3d at 1076.

10       Plaintiff was arrested on suspicion of harassment. Dkt. # 13, 5. In Washington

11       (1) A person is guilty of harassment if:
         (a) Without lawful authority, the person knowingly threatens:
12       (i) To cause bodily injury immediately or in the future to the person
         threatened or to any other person; or
13       (ii) To cause physical damage to property of a person other than the actor; or
         (iii) To subject the person threatened or any other person to physical
14       confinement or restraint; or
         (iv) Maliciously to do any other act which is intended to substantially
15       harm the person threatened or another with respect to his or her physical
         or mental health or safety; and
16       (b) the person by words or conduct places the person threatened in reasonable fear
         that the threat will be carried out. . . .
17       (2)(a) Except as provided in (b) of this subsection, a person who harasses another
         is guilty of a gross misdemeanor.

18

19  WASH. REV. CODE § 9A.46.020.  An officer may make a warrantless arrest for commission of a

20  gross misdemeanor only when the officer has probable cause "that a person has committed . . . a

21  misdemeanor or gross misdemeanor, involving physical harm or threats of harm to any person."

22  WASH. REV. CODE § 10.31.100(1).  Thus, contrary to Plaintiff's claim that his statement was not

23  harassment because the law requires a "threat to kill," Dkt. # 23, 2, Washington law requires

24

1   only that Plaintiff must have "knowingly threaten[ed] . . . [t]o cause bodily injury immediately or

2   in the future . . . and [the] words or conduct places the person threatened in reasonable fear that

3   the threat will be carried out." WASH. REV. CODE § 9A.46.020.

4          Even with all reasonable inferences drawn in his favor, Plaintiff fails to properly support

5   his false arrest claim with any facts that show a lack of probable cause.  Rather, the Court finds

6   that Officers Beam and Coke had probable cause to make a warrantless arrest of Plaintiff

7   because Ms. Rife and Ms. Steckler both informed Officer Coke that Plaintiff had verbally abused

8   and threatened them with physical harm by stating "Yes, it will/can get physical with you." Dkt.

9   # 13, Exs. B, C.  Both Ms. Rife and Ms. Steckler were frightened by Plaintiff's actions and

10  threats to the point that Ms. Rife grabbed an ice mallet to use as protection. Dkt. # 13, Ex. B.

11  Furthermore, under the circumstances, any reasonable officer would have believed that he had

12  probable cause to arrest Plaintiff without a warrant.  Therefore, Plaintiff's § 1983 claim of false

13  arrest fails because Officers Beam and Coke are protected by qualified immunity.

14      2.  Denial of Adequate Medical Attention

15         Plaintiff asserts he was denied adequate medical attention in violation of his Fourteenth

16  Amendment Due Process rights. *See* Dkt. # 4.  Plaintiff claims that his rights were violated and

17  he was injured when Officer Coke refused to administer anti-seizure medication to Plaintiff. *See*

18  Dkt. # 4.  Specifically, Plaintiff asserts that he "suffered undue violence because [P]laintiff had

19  suffered a Grand-mall [sic] Seizure due to the direct negligence of [O]fficer Coke." Dkt. # 4.

20         Prior to conviction an arrestee's rights derive from the Due Process Clause of the

21  Fourteenth Amendment "rather than the Eighth Amendment's protection against cruel and

22  unusual punishment." *Gibson v. Cnty. Of Washoe, Nev.*, 290 F. 3d 1175, 1187 (9th Cir. 2002)

23  (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).  However, with regard to medical needs, the

24  Due Process Clause requires, at a minimum, the same duties imposed under the Eighth

1  Amendment: "persons in custody ha[ve] the established right to not have officials remain

2  deliberately indifferent to their serious medical needs." *Id.* (quoting *Carnell v. Grimm*, 74 F.3d

3  977, 979 (9th Cir. 1996) (alteration in original and internal quotations omitted).

4        In the Ninth Circuit, a plaintiff claiming inadequate medical treatment must show (1) "a

5  'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in

6  further significant injury or the unnecessary and wanton infliction of pain" and (2) "the plaintiff

7  must show the defendant's response to the need was deliberately indifferent." *Jett v. Penner*, 439

8  F.3d 1091, 1096 (9th Cir. 2006) (internal quotations and citations omitted).  "Deliberate

9  indifference" is shown by "a purposeful act or failure to respond to a[n] [arrestee's] pain or

10  possible medical need and harm cause by the indifference." *Id.*  Indifference may appear "when

11  [officers] deny, delay[,] or intentionally interfere with medical treatment." *Id.* (internal citations

12  omitted).  However, an "inadvertent [or negligent] failure to provide adequate medical care alone

13  does not state a claim under § 1983." *Id.* (internal quotations and citations omitted).  Therefore,

14  an officer is not entitled to qualified immunity for a denial of medical care when the Plaintiff had

15  a serious medical need and the officer was deliberately indifferent to that need.

16        Here, even with all reasonable inferences drawn in his favor, Plaintiff is unable to

17  establish that Officers Beam or Coke were deliberately indifferent to his medical needs.  Plaintiff

18  claims that after he was arrested he requested a normal dose of his anti-seizure medication, but

19  his request was denied which resulted in his suffering a Grand-mal seizure.[5] Dkt. # 4.  However,

20  Plaintiff has not shown that the officers were "deliberately indifferent" in regard to his medical

21

22  _____

23  [5] Plaintiff asserts that he made this request to Officer Coke. Both Officers Coke and Beam
   testified that Officer Beam arrested, booked, and dealt with Plaintiff regarding his medical needs.

24  Therefore, the Court considered both Officers for purposes of its ruling.

ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

1   needs.  Even taking all of the facts and assertions made in Plaintiff's complaint as true, Plaintiff

2   fails to show a deliberate indifference by Officers Beam or Coke. *See* Dkt. # 4; Dkt. # 20.

3       Plaintiff was arrested around 2:07 a.m. by Officer Beam. Dkt. # 13, Ex. A.  Plaintiff then

4   made his request for his medication when he was taken to booking. Dkt. # 14, ¶8.  However,

5   Officer Beam did not administer Plaintiff's medications. Dkt. # 14, ¶8.  Rather, at around 2:22

6   a.m. Officer Beam called the Port of Seattle Fire Department in order to have a firefighter

7   evaluate Plaintiff and administer any medications. Dkt. # 14, ¶9; Dkt. # 12. ¶2, Ex. A.  Arriving

8   around 2:28 a.m., Firefighter Hendrickx met with Plaintiff and evaluated his condition. Dkt. #

9   12, ¶3.  Firefighter Hendrickx determined that Plaintiff was not suffering from a "serious medical

10  need" and only needed to take his medication, which Firefighter Hendrickx administered. Dkt. #

11  12, ¶3.  In fact, Firefighter Hendrickx observed that Plaintiff "did not display any . . . signs or

12  symptoms" of a Grand-mal seizure and that at "no time did [Plaintiff] tell [him] that he had a

13  seizure, had the warning signs of a seizure, or was fearful of having a seizure. [Rather,] [h]e

14  made absolutely no mention of a seizure and did not exhibit any physical signs or symptoms

15  indicative of having had a seizure." Dkt. # 12, ¶¶4-5.

16      Even assuming that Plaintiff actually suffered a Grand-mal seizure and that Officer Beam

17  denied him his medication, Plaintiff fails to show a deliberate indifference.  Rather, the

18  undisputed evidence shows that Officer Beam acted within his responsibilities and quickly

19  sought medical attention for Plaintiff.  Therefore, the officers are protected by qualified

20  immunity.

21  **D. Washington Common Law Claim of False Arrest**

22      Plaintiff asserts a common law claim of false arrest under Washington law against both

23  the Port of Seattle P.D. and Officers Beam and Coke. *See* Dkt. # 4.  Defendants assert that

24  Plaintiff's claim is barred by the statute of limitations. Dkt. # 11, 9.

1    Plaintiff contends that the he has three years in which to bring this claim. Dkt. # 4.

2  However, Washington law is clear that a common law claim of false arrest is subject to a two-

3  year statute of limitations period. *Heckart v. City of Yakima*, 42 Wash. App. 38, 39, 708 P.2d

4  407, 407 (Wash. Ct. App. 1985).  Washington courts interpret a common law claim of false

5  arrest as essentially the same as a common law claim for false imprisonment. *Id.*  This is

6  especially true because "a false imprisonment occurs whenever a false arrest occurs." *Id.*  Thus,

7  Washington courts apply the two-year statute of limitations period contained in WASH. REV.

8  CODE § 4.16.100(1) to false arrest claims. *Id.*

9    Plaintiff's cause of action accrued on June 17, 2009, when he was arrested. Dkt. # 14, Ex.

10  A.  Plaintiff filed this action almost three years later on June 4, 2012. Dkt. # 1. Plaintiff's

11  common law claim of false arrest is barred against all parties by the statute of limitations.

12  **E.  Washington Common Law Claim of Negligence**

13    Plaintiff asserts a common law claim of negligence against the Port of Seattle P.D. and

14  Officers Beam and Coke under Washington law. *See* Dkt. # 4.

15    In order to prove negligence, Plaintiff must show (1) that the defendants owed a duty, (2)

16  that the defendants breached the duty, and (3) that the defendants' breach was the proximate

17  cause of (4) Plaintiff's resulting injury. *Pedroza v. Bryant*, 101 Wash. 2d 226, 228, 677 P.2d 166,

18  168 (Wash. 1984).  Operators of a jail have a duty to a prisoner "to keep him in health and

19  safety." *Shea v. City of Spokane*, 17 Wash. App. 236, 241, 562 P.2d 264, 267 (Wash. Ct. App.

20  1977).  "The duty to the prisoner arises because when one is arrested and imprisoned for the

21  protection of the public, he is deprived of his liberty, as well as the ability to care for himself."

22  *Id.* at 241-42. Thus, "when a city takes custody of a prisoner, it must provide health care for that

23  prisoner. . . . This is a positive duty arising out of the special relationship that results when a

24  custodian has complete control over a prisoner deprived of liberty." *Id.* at 242.

1   In *Shea v. City of Spokane* the court held that the city had a duty to provide health care to

2   a prisoner. *Id.*  In *Shea* the plaintiff had been arrested and began to feel nauseous. *Id.* at 238.  He

3   asked the jailer for some medicine that had been taken when he was booked into the jail. *Id.*  The

4   jailer refused to provide the medicine or provide the plaintiff with medical care. *Id.*  Shortly

5   after, the plaintiff suffered a severe seizure which left him with serious injuries including partial

6   and total paralysis. *Id.* at 239-40.

7   This case is different. To survive summary judgment, Plaintiff must provide supporting

8   "evidence on which the jury could reasonably find for" Plaintiff and not merely the "existence of

9   a scintilla of evidence in support" of his position. *Anderson,* 477 U.S. at 252.  Here, even

10   assuming that Plaintiff suffered a Grand-mal seizure and that Officer Beam denied him his

11   medication, Plaintiff fails to show that the defendants breached their duty.  Plaintiff claims that

12   he suffered a Grand-mal seizure, but he does not provide any facts that show that the defendants

13   breached their duty. Dkt. # 4.  Alone, his bare assertions of negligence are not sufficient to

14   survive summary judgment.

15   Within approximately thirty minutes of Plaintiff's arrest and request for medicine, he was

16   given medical care. Dkt. # 14; Dkt. # 12.  During Firefighter Hendrickx's examination, Plaintiff

17   made no complaints, did not exhibit the signs or symptoms of having had or about to have a

18   seizure, and indicated to Firefigher Hendrickx that he did not need medical attention. Dkt. # 12.

19   Plaintiff completely fails to address these assertions; thus, the Court considers the facts

20   undisputed under Rule 56. Fᴇᴅ. R. Cɪᴠ. P. 56(e)(2).  Plaintiff's sole contention in response is that

21   "anytime a detainee is hurt . . . due to the negligence of the officers, that agency usually gets

22   scared, and thus lots of interesting lies develop in order to save the agency fault." Dkt. # 20.

23

24

1    Here, where Plaintiff fails to "make a sufficient showing on an essential element of [his] case,"

2    summary judgment is proper. *Celotex Corp.*, 477 U.S. at 323.

3                                    **IV. CONCLUSION**

4           Having reviewed the relevant pleadings, the declarations and exhibits attached thereto,

5    and the remainder of the record, the Court hereby finds and ORDERS:

6           (1) Defendant's Motion for Summary Judgment (Dkt. # 11) is GRANTED.

7           (2) This action is hereby dismissed with prejudice.

8           (3) The Clerk is directed to forward a copy of this Order to all Counsel of record.

9

10          Dated this 8th day of November 2012.

11

12

13                                         RICARDO S. MARTINEZ
                                           UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24